UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ALEXANDER MASCAL, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:22-cv-00292-JDL |
| | ) |
| MAINE DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants | ) |

**ORDER ON MOTION TO AMEND COMPLAINT**

Plaintiff moves for leave to file an amended complaint "to clarify Defendants named in Count One, Two, and Nine are sued in their individual capacities; (2) to correct errors in Defendants' names; (3) to add additional language to further clarify the factual allegations underpinning Plaintiff's claim in Count Five of the Complaint, and finally (4) to remove facts Plaintiff believes to be unnecessary to his claims against Defendants." (Motion to Amend at 2, ECF No. 61.) Defendants oppose Plaintiff's attempt to modify his substantive allegations. (Defendant's Opposition to Motion to Amend, ECF No. 63.) Defendants in part contend that as to certain claims, any amendment would be futile.

Following a review of the record and after consideration of the parties' arguments, including the arguments the parties made in connection with Defendants' partial motion to dismiss the original complaint and Plaintiff's motion to strike the motion to dismiss, I grant Plaintiff's motion.

## FACTUAL BACKGROUND[1]

Plaintiff was in custody from May 2012 to February 2017. (Proposed Amended Complaint, ECF No. 61-1 ¶ 26.) Plaintiff was at the Mountain View facility for two years, he was transferred to Long Creek for the next two years, and then he was released from Cumberland County Jail. (*Id.*) Plaintiff alleges the staff at each facility knew his mental health history. (*Id.*) From the beginning of Plaintiff's incarceration, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD), Attention Deficit and Hyperactive Disorder (ADHD), Oppositional Defiance Disorder (ODD), and depressive disorder. (*Id.* ¶ 42.) Plaintiff had a history of psychiatric hospitalizations, trauma, and suicidal ideation. (*Id.*)

At Mountain View, Plaintiff was involved in altercations with staff members and other residents of the facility. (*Id.* ¶ 44.) He also engaged in self-harm. (*Id.*) Plaintiff alleges the staff, directed by Defendant Vance,[2] placed Plaintiff in isolation. (*Id.*) Plaintiff alleges this began the cycle that Plaintiff and the facility staff repeated throughout his incarceration—due to a mental health issue, Plaintiff commits an infraction, and the facility staff responds with an uneven amount of force and often places Plaintiff in isolation. Plaintiff alleges that at Mountain View, he was put in isolation more than twelve times. (*Id.* ¶ 46.) Plaintiff alleges one period of isolation lasted three months. (*Id.* ¶ 47.)

---

[1] The following facts are derived from Plaintiff's proposed amended complaint (ECF No. 61-1).

[2] Each time Plaintiff was placed in isolation at Mountain View, Defendant Vance directed the transfer. (Proposed Amended Complaint ¶ 50.) The decision was approved by Defendant Morin. (*Id.*) If the isolation period was more than seventy-two hours, the decision was finalized by Defendant Ponte. (*Id.*)

Plaintiff alleges two incidents of physical force used in reaction to a violation at Mountain View. He asserts that when he covered his window with paper, Defendant Macomber tackled him, pinned him to his bed, placed his full body weight on top of Plaintiff, and hit him in the ribs. (*Id.* ¶ 60.) Plaintiff alleges that on another occasion, Defendant Macomber and another staff member entered his cell, tackled him to the ground, slammed his head against the wall, and kicked him in the ribs. (*Id.* ¶ 61.)

According to Plaintiff, at Long Creek, the cycle repeated: symptom, infraction, then isolation or force. (*Id.* ¶ 53.) Defendant Lemery supervised the high-risk unit to which Plaintiff was assigned. (*Id.*) Plaintiff was confined in isolation for many infractions.[3] (*Id.* ¶¶ 53-54.)

Plaintiff alleges that when he was found eating lunch in another resident's room, Defendant Sturgis and two other staff members entered the cell, removed Plaintiff, and carried him into another cell. (*Id.* ¶ 62.) Plaintiff maintains that as he tried for the door, Defendant Sturgis grabbed him by the throat and threw him to ground, which caused him to strike his head on the metal toilet. (*Id.*) Plaintiff alleges that when he was on the floor, Defendant Sturgis punched him in the ribs. (*Id.*)

Plaintiff further alleges that on another occasion at Long Creek, he became upset because he was not permitted to go outside. Defendant Brooker, Defendant Young, and another staff member rushed towards him, forcibly slammed him against the wall, held him

---

[3] At Long Creek, the decision to place Plaintiff in isolation was made by either Defendant Lemery or Defendant Janosik. (Proposed Amended Complaint ¶ 55.) The decision was approved by Defendant Merrill II. (*Id.*) If the confinement was longer than seventy-two hours, Defendant Ponte or Defendant Fitzpatrick approved the decision. (*Id.*)

against the wall, placed him in handcuffs, and carried him to the "Special Management Unit." (*Id.* ¶ 63.)

Plaintiff also describes an incident that occurred after he returned from court upset. (*Id.* ¶ 67.) Plaintiff alleges he took his shirt off and threw a plastic crate against the wall. (*Id.*) When Defendant Staley, Defendant Bouchard, and another individual cornered him, Plaintiff ran at one of the staff members, and Defendants tackled him to the ground, handcuffed him, and placed a spit mask on him.[4] (*Id.* ¶¶ 68-70.) Plaintiff alleges that Defendant Lemery knew that Plaintiff had a severe trauma response to the use of the spit mask. (*Id.* ¶ 65.)

Plaintiff asserts that although Long Creek staff knew of Plaintiff's mental health history, they did not offer Plaintiff therapeutic support. (*Id.* ¶ 53.) Plaintiff alleges that due to a disability, he has a lack of impulse control. (*Id.* ¶ 79.) Plaintiff contends he qualified for an accommodation for his disabilities at both Long Creek and Mountain View. (*Id.* ¶ 73.)

Defendants do not challenge at this stage of the proceedings Plaintiff's ability to assert the individual capacity claims alleged in Counts one (use of excessive isolation in violation of the Eighth and Fourteenth Amendments), two (use of excessive isolation in violation of the Maine Constitution), and nine (failure to protect in violation of the Fourteenth Amendment).[5] (Joint Status Update at 1, ECF No. 59.)

---

[4] This incident resulted in an assault charge against Plaintiff. (Proposed Amended Complaint ¶ 71.)

[5] Defendants also do not contest Plaintiff's amendment to correct the spelling of the names of certain defendants. (*Id.*)

## LEGAL STANDARD

When a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'") The most important factor to consider may be prejudice, "if the court is persuaded that no prejudice will accrue, the amendment should be allowed." 21 Charles Alan Wright & Arthur R Miller, *Federal Practice and Procedure* § 1487 (3d ed.) A "futile" amendment is one that "would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). In other words, "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Boston & Me. Corp. v. Hampton*, 987 F.2d 855, 868 (1st Cir. 1993).

## DISCUSSION

**A.   Excessive Force and Failure to Protect Claims**

Citing *Heck v. Humphrey*, 512 U.S. 477 (1994), Defendants argue the amendment of the substantive allegations regarding Plaintiff's excessive force and failure to protect claims would be futile as Plaintiff cannot proceed on the claims. In *Heck*, the Supreme

5

Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.  Defendants contend that a finding in favor of Plaintiff would invalidate his convictions for assault and, therefore, *Heck* bars Plaintiff's excessive force and failure to protect claims.

A conviction for assault does not necessarily preclude, under *Heck*, an excessive force claim.  *See Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006).  When assessing whether *Heck* bars a claim, a court "must consider the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff could prevail only by 'negating an element of the offense of which he was convicted.'"  *Id.* at 179.  Whether the *Heck* bar applies depends on the theory of relief Plaintiff is asserting and whether the facts of the convictions and the § 1983 claim are so interrelated.  *Id.* at 180 (stating that *Heck* bars an excessive force claim based on a theory that the plaintiff was "not guilty of assault at all, and so [defendant's] use of force was excessive," and implying that *Heck* does not bar an excessive force claim based on a theory that the threat posed from a prior assault was already resolved before officers used unreasonable force); *see also*, Stone v. Wall, No. CA 11-127L, 2015 WL 1137544, at *7–8 (D.R.I. Mar. 12, 2015) (rejecting some excessive force claims because a plaintiff can "plead[ ] himself into *Heck*-barred territory" if a claim is based on an insistence that the plaintiff did not physically resist the officers he was convicted of assaulting, but not doubting the viability of excessive force claims against other officers who allegedly mistreated him after he was no longer a threat).

6

In his original complaint and in the proposed amended complaint, Plaintiff alleges multiple incidents of excessive force. Although Defendants provide and cite the adjudications of some of the assault charges, the record does not permit the necessary fact-based analysis to determine whether *Heck* bars some or all of Plaintiff's excessive force and failure to protect claims. Consistent with the need to assess the facts in each case, the principal cases upon which Defendants rely to support their argument, including a case from this District, were decided on a summary judgment record. *See Mahmoud v. Jacques*, No. 2:14-cv-255-JHR, 2016 WL 1734076 (D. Me. Apr. 29, 2016) (holding the record established *Heck* barred the case because the facts related to the 42 U.S.C. § 1983 claim and the underlying conviction were a "seamless web"); *Stone*, 2015 WL 1137544 at * 8 (holding defendants were entitled to summary judgment because the allegations were "starkly inconsistent" to the plaintiff's admission in the conviction); *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005) (affirming summary judgment where *Heck* barred the claim because discovery revealed the claim and underlying conviction were "inextricably intertwined" and the plaintiff could have raised the claim as a defense in the underlying conviction); *Horton v. Sampson*, 845 F. Supp. 2d 694 (W.D.N.C. 2012).

Where a court applied *Heck* to dismiss a claim based on the plaintiff's pleadings, the court described the allegations as "inherently inconsistent" with the relevant convictions. *See Whatley v. Coffin*, 496 Fed. Appx. 414, 417 (5th Cir. 2012). Plaintiff's allegations are not "starkly inconsistent" or "inherently inconsistent" with the assault convictions identified by Defendants. As noted above, an assault conviction and an excessive force claim are not necessarily mutually exclusive. While *Heck* might ultimately

7

preclude recovery on Plaintiff's excessive force or failure to protect claims, "the record before [the Court] does not permit a determination of the requisite relatedness." *Thore*, 466 F.3d at 180.

**B.     ADA Claim**

To prevail on his claim under Title II of the Americans with Disabilities Act ("ADA"), Plaintiff must establish

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Buchanan v. Maine*, 469 F.3d 158, 170-71 (1st Cir. 2006) (quoting *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000)).  Disability, as defined by the ADA, is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).  Major life activities may include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. §12102(2)(A).

Defendants argue that Plaintiff's ADA claim is barred by the statute of limitations. Defendants contend that in his original complaint, Plaintiff alleged he was "regarded as" having a disability and, therefore, Plaintiff's claim is barred by the four-year statute of

8

limitations in 28 U.S.C. § 1658(a).[6] *See Mercado v. Puerto Rico*, 814 F.3d 581, 587 (1st Cir. 2016) (concluding that the four-year statute of limitation limits the period for "regarded as" ADA claim). In the proposed amended complaint, Plaintiff alleges that "[a]t all times relevant to this Complaint, because of his disability, [Plaintiff] was substantially limited in his ability to cope with stress, think, concentrate, learn, communicate, sleep, and care for himself."[7] Plaintiff maintains that the proposed amendment eliminates any statute of limitations defense because a claim based on a disability that "substantially limits" a plaintiff in one or more abilities is governed by the six-year statute of limitations under 14 M.R.S. § 752.

Defendants do not challenge Plaintiff's assertion that a six-year limitations period governs a claim based on an impairment that substantially limits one or more major life activities. Defendants instead contend that Plaintiff's proposed amendment is conclusory and thus the amendment would be futile.

Plaintiff has alleged in the original complaint and in the proposed amended complaint that he suffers from ADHD, PTSD, ODD, and depressive disorder. He has sufficiently alleged the nature of his impairments and the way the impairments impact his

---

[6] 28 U.S.C. § 1658(a) provides: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." Section 1658(a) was enacted on December 1, 1990. The ADA was amended in 2008 to define the scope of the term "being regarded as having such an impairment."

[7] The "regarded as" prong of the ADA is established "if the individual established that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or perceived to limit a major life activity." *Id*. § 12102(3)(A).

conduct. The ADA includes a detailed definition of "major daily activities." In his proposed amended complaint, Plaintiff alleges that he is substantially limited in several activities identified in the ADA as major life activities, including in his ability to care for himself, to communicate, to sleep, to think, and to concentrate. Defendants argue the pleading standard requires to assert how his impairment limits his ability to care for himself or how it has affected his ability to communicate. The Court disagrees. Plaintiff has not simply alleged that "he has an impairment that substantially limits a major life activity." Instead, Plaintiff has alleged the nature of his impairment, identified the major life activities that are affected by his impairment, and described conduct that is related to his impairment. The additional allegation is evidently proposed to clarify for Defendants and the Court which legal theory of recovery Plaintiff intends to pursue. Such an amendment is not impermissible and does not convert Plaintiff's allegations regarding his impairment and the effect of the impairment to a legal conclusion. In short, contrary to Defendants' argument, taken together, Plaintiff's assertions are not wholly conclusory. Plaintiff's proposed amendment, therefore, is not futile.[8]

## CONCLUSION

Based on the foregoing analysis, I grant the Plaintiff's motion for leave to amend the complaint. Plaintiff shall file the amended complaint within seven days of the date of this order.

---

[8] Defendants also cite Plaintiff's delay in moving to amend in support of their opposition to the motion. Because the Court has not issued a scheduling order, the Court is not persuaded that the timing of Plaintiff's motion should preclude the amendment.

## **NOTICE**

      Any objections to the Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of November, 2023.