| POLICY TITLE: USE OF FORCE, GENERAL GUIDELINES | | PAGE 1 OF 10 |
|---|---|---|
| POLICY NUMBER: 9.18 | | Confidential Policy |
| CHAPTER 9: SECURITY AND CONTROL | | |
| | STATE of MAINE DEPARTMENT OF CORRECTIONS | PROFESSIONAL STANDARDS: |
| | Approved by Commissioner: | See Section VII |
| EFFECTIVE DATE: February 1, 2002 | LATEST REVISION: June 1, 2011 | CHECK ONLY IF APA [ ] |

## I. AUTHORITY

The Commissioner of Corrections adopts this policy pursuant to the authority contained in Title 34-A M.R.S.A. Section 1403 and Title 17-A M.R.S.A. Sections 107-108.

## II. APPLICABILITY

All Departmental Juvenile Facilities

## III. POLICY

It is the policy of the Department of Corrections to restrict the use of physical force to instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control, and then only as a last resort. When circumstances permit, staff shall use verbal, rather than physical, means to accomplish these purposes. The use of force by staff is governed by the Maine Criminal Code, Title 17-A, M.R.S.A., Sections 107-108 and the continuum of force policy and procedures adopted by the Department of Corrections. In no event is physical force justifiable as punishment. A written report shall be provided to the Chief Administrative Officer following all uses of force.

Firearms are not permitted in the facility, except in emergency situations.

## IV. CONTENTS

Procedure A: Use of Force, General
Procedure B: Use of Force Continuum, Non-Deadly
Procedure C: Use of Force Continuum, Deadly
Procedure D: Secure Storage Area
Procedure E: Storage
Procedure F: Disposal

## V. ATTACHMENTS

None

## VI. PROCEDURES

### Procedure A: Use of Force, General

1. The Superintendent, or designee, shall ensure that the use of force by facility staff complies with this policy and procedures, as well as Maine Law.

2. The Superintendent, or designee, shall keep up to date on existing law, standards, and policies and procedures regarding the use of force.

3. All newly hired Juvenile Program Specialists/Workers shall be trained in the use of force continuum prior to being assigned a duty post on their own.

4. All Juvenile Program Specialists/Workers and Juvenile Facility Operations Supervisors shall be trained in the use of force continuum and unarmed self-defense techniques on an annual basis. Such training shall be documented in the individual's training or personnel file and shall include, at a minimum:

    a. Subject/topic areas trained in;
    b. Date training received;
    c. Signature of person receiving training;
    d. Name of trainer/instructor; and
    e. Results of performance evaluations and/or testing.

5. Only those chemical agents or other restraint or defensive equipment or chemical wipes authorized by the Commissioner and issued by the Department may be carried by Juvenile Program Specialists/Workers and Juvenile Facility Operations Supervisors while in the performance of their duties. Juvenile Program Specialists/Workers and Juvenile Facility Operations Supervisors may not make any modifications to chemical agents or other issued equipment.

6. Prior to being approved for use by the Commissioner, all chemical agents or other restraint or defensive equipment shall be researched and may be tested for their intended use. If recommended to the Commissioner for use, such research and testing shall be documented in a written report to the Commissioner and shall include, at a minimum:

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 2 of 10<br>6/1/11R<br>Confidential Policy |

  a. Description of the equipment item(s), including specifications and cost;
  b. A description of its intended use and by whom;
  c. Results of research/testing conducted;
  d. Description of staff training, qualification and testing needed; and
  e. Draft procedures for its use.

7. All Juvenile Program Specialists/Workers and Juvenile Facility Operations Supervisors authorized by the Superintendent to use chemical agents or other restraint or defensive equipment shall receive ongoing training, on an as needed basis, in their proper use and handling. Such training shall be documented in the individual staff person's training or personnel file and shall include, at a minimum:

  a. Subject/topic areas trained in;
  b. Date training received;
  c. Signature of person receiving training;
  d. Name of trainer/instructor; and
  e. Results of performance evaluations and/or testing.

8. Use of force at Level IV or above by Juvenile Program Specialists/Workers and Juvenile Facility Operations Supervisors shall be fully documented in a written report by the individuals involved to the Superintendent, no later than the end of their shift and shall include, at a minimum:

  a. Date, time, and location of the incident;
  b. The names of all persons involved;
  c. A description of the incident in which force was used and justification for same;
  d. The type of force used, by whom, against whom;
  e. Identification of any chemical agent or other restraint or defensive equipment used; and
  f. Date and time medical personnel were notified and a copy of the written report by the medical personnel identifying the nature and extent of any injuries and any medical treatment provided.

9. Whenever video equipment is available and in situations that permit, every effort shall be made to videotape situations where force at Level IV or above may be required.

10. The Superintendent, or designee, shall review all reports and videotapes in cases where force is used. If the reports and videotapes are reviewed by a designee, the designee shall notify the Superintendent in writing of the results of the review. In cases where the use of force results in serious bodily injury, the

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
| --- | --- | --- |
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 3 of 10<br>6/1/11R<br>Confidential Policy |

Superintendent shall immediately notify the Commissioner and immediately forward a copy of the reports and videotapes to the Commissioner.

11. In cases where deadly force is used, the Commissioner may have an internal and/or external investigation conducted to determine compliance with Title 17-A M.R.S.A. Sections 107-108 and this policy and its procedures. At a minimum, every use of force that results in a death shall be reported to the Department of the Attorney General by the Commissioner, or designee, as soon as practicable.

12. In all cases where force is applied and bodily injury is apparent or the person complains of bodily injury, medical personnel shall be notified to determine whether there are any bodily injuries and provide any medical treatment necessary. In the event the use of force occurs off facility grounds, the staff shall provide appropriate care for the resident, if possible, until the resident is evaluated by medical personnel. Bodily injury means physical pain, physical illness or any impairment of physical condition.

13. The Continuum of Force consists of the six levels adopted by the Department to guide facility staff in the use of force. They include:

    Level I:    Staff Presence;
    Level II:   Verbal Commands;
    Level III:  Directional Contact;
    Level IV:   Chemical Agents;
    Level V:    Control and Restraint; and
    Level VI:   Deadly Force.

14. Physical force means any use of force which creates a substantial risk of bodily injury. Levels I, II, and III are not physical force.

15. Non-deadly force means any physical force which is not deadly force. Levels IV and V are non-deadly force.

16. Deadly force means physical force which a person uses with the intent of causing, or which the person knows to create a substantial risk of causing, death or serious bodily injury. Level VI is deadly force.

17. Excessive force means the use of force that is unnecessary or a use of an unreasonable degree of force.

**Procedure B: Use of Force Continuum, Non-deadly**

1. Non-deadly force means any physical force which is not deadly force. Non-

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 4 of 10<br>6/1/11R<br>Confidential Policy |

deadly force by facility staff shall be limited to the use of a reasonable degree of force when and to the extent reasonably believed to be necessary:

a. To defend oneself or a third person from what staff reasonably believes is the imminent use of unlawful non-deadly force;

b. To prevent escape, provided the staff person is a Juvenile Program Specialist/Worker, Juvenile Facility Operations Supervisor or another staff person responsible for the custody, care, or treatment of residents; or

c. To enforce the rules of the facility, provided the staff person is a Juvenile Program Specialist/Worker, Juvenile Facility Operations Supervisor or another staff person responsible for the custody, care, or treatment of residents.

2. Non-Deadly Force, Department's Continuum of Force Levels I to V.

Facility staff is not obligated to move onto the next higher level of force. The staff should apply de-escalation tactics whenever possible or may decide to retreat. When the staff moves down a level of force, it is considered de-escalation. When it is necessary for staff to match their force to the other person's use of force, this is considered escalation. Staff should escalate only to the next higher level of force whenever possible, but the staff may be required to skip levels in the continuum of force. After the person's actions plateau or decrease in intensity, any further escalation of force by the staff may be viewed as an excessive use of force.

Level I: **Staff Presence** is best illustrated when staff is present or arrives at a scene and the person sees and understands the staff. The staff may use de-escalation tactics to prevent the situation from escalating. If the person continues the action, the staff may advance to another, appropriate level.

Level II: **Verbal Commands** is when the staff gives the person a direct order, questions, or uses verbal persuasion to attempt to get the person to comply. Examples are when the staff advises the person to keep quiet, move along and so forth. The assumption is that the person can hear and understand the staff's commands. Again the staff may use de-escalation tactics to prevent the situation from escalating. If the person ignores the staff's verbal commands and continues the action, the staff may advance the situation to another, appropriate level.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 5 of 10<br>6/1/11R<br>Confidential Policy |

**Level III:** **Directional Contact** is when the staff makes physical contact with the person to direct the person's movement or body position for the purpose of controlling, escorting, or placing in restraints. If the person physically resists or otherwise indicates the person shall physically resist the staff's directional contact, the staff may advance the situation to another, appropriate level. In a room extraction situation, the Juvenile Program Specialist/Worker or Juvenile Facility Operations Supervisor may skip Level III if the resident refuses to comply with verbal commands and if the resident has been warned that failure to cooperate with the room extraction process shall result in the use of a chemical agent.

**NOTE: Chemical agents may only be used with the permission of the Commissioner, or designee.**

**Level IV:** **Chemical Agent** is when, after being warned by a Juvenile Facility Operations Supervisor authorized to use a chemical agent not to resist and the resident continues to physically resist directional contact, a chemical agent is used on the resident to gain control of the resident while preventing a physical altercation, avoiding injury to the staff and the resident.

**Level V:** **Control and Restraint** is when the Juvenile Program Specialist/Worker or Juvenile Facility Operations Supervisor applies appropriate restraints (wrist, waist, ankle) to obtain or retain physical control of the person who has physically resisted. In those cases where the person's physical resistance escalates or the person becomes more violent after a chemical agent has been applied in Level IV and the Juvenile Program Specialist/Worker or Facility Operations Supervisor is not able to control and restrain the person under Level V, the Juvenile Program Specialist/Worker or Juvenile Facility Operations Supervisor may escalate to Level VI if condition for the use of deadly force are met, such as the person is using or threatening to use a dangerous weapon.

3. In the case of facility staff who is not carrying an issued chemical agent or other restraint or defensive equipment or who is carrying such equipment but is unable to effectively use the equipment, the staff is authorized to use another means to defend him/herself or another from what the staff reasonably believes is the imminent use of unlawful, non-deadly force.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 6 of 10 .6/1/11R Confidential Policy |

**Procedure C: Use of Force Continuum, Deadly**

1. Deadly Force means physical force which a person uses with the intent of causing, or which the person knows to create a substantial risk of causing, death or serious bodily injury. Serious bodily injury means a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health. Intentionally or recklessly discharging a firearm in the direction of another person or at a moving vehicle constitutes deadly force. Deadly force by facility staff against residents shall be limited to the use of deadly force when staff reasonably believes such force is necessary:

   a. To defend oneself or a third person from what the staff person reasonably believes is the imminent use of deadly force; or

   b. To prevent the escape of a resident when the staff reasonably believes that the resident has committed a crime involving the use or threatened use of deadly force, or is using a dangerous weapon in attempting to escape, or otherwise indicates that the resident is likely to seriously endanger human life or to inflict serious bodily injury unless apprehended without delay, provided the staff person is a Juvenile Program Specialist/Worker or Juvenile Facility Operation Supervisor; and

      1) The staff has made reasonable efforts to advise the resident that the staff is a Juvenile Program Specialist/Worker or Juvenile Facility Operations Supervisor attempting to prevent the escape, and the staff has reasonable grounds to believe that the resident is aware of this advice; or

      2) The staff reasonably believes that the resident otherwise knows that the staff is a Juvenile Program Specialist/Worker or Juvenile Facility Operations Supervisor attempting to prevent the escape.

2. Deadly Force, Department's Continuum of Force Level VI

   **Level VI:** **Deadly Force** is when staff uses deadly force against a person because the use of lower levels of the continuum has failed or because the other person's use or threatened use of deadly force has required the staff to match that force without using the entire continuum.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 7 of 10<br>6/1/11R<br>Confidential Policy |

Staff is authorized to use any means necessary to defend him/herself or another person from what the staff reasonably believes is the imminent use of deadly force.

**Procedure D: Secure Storage Area**

1. Each facility shall have a designated secure area designed to control the availability and use of chemical agents and other restraint or defensive equipment. Appropriate authorization is required for access to this area and the issuance of inventory items.

2. At a minimum, documentation for the designated secure area shall include the following information:

   a. Log of any item issued and returned to storage;
   b. Name of staff obtaining or returning each item;
   c. Name of staff issuing or receiving the item;
   d. Time the item was issued and returned to storage; and
   e. Brief description of the condition of the returned item (e.g., damaged, chemical agent depleted, etc.).

3. The designated secure area shall be secured and identified as a restricted area that is subject to access by authorized staff only. All storage containers used for chemical agents and other restraint or defensive equipment shall be sufficient to ensure protection from damage by environmental conditions (e.g.: water, fire, heat, etc.) and unauthorized acquisition.

4. An inventory of all facility chemical agents and other restraint or defensive equipment shall be conducted at least monthly and all items shall be accounted for, including the condition of the equipment, expiration dates, and the status of repairs for malfunctioning or inoperable equipment. Discrepancies in the inventory shall be reported to the Facility Operations Manager, or other supervisory staff designated by the Superintendent.

5. The designated staff shall prepare the designated secure area for safety, security and hazardous materials inspections. The facility Safety Officer, or other designated staff, shall conduct the inspections. These inspections shall be documented on the appropriate report form.

6. The Facility Operations Manager, or other supervisory staff designated by the Superintendent, shall inspect security practices of each facility's designated secure area on a monthly basis. Findings shall be reported to the Superintendent, or designee. This inspection shall be documented on the appropriate report form.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 8 of 10<br>6/1/11R<br>Confidential Policy |

7. All chemical agents, and other restraint or defensive equipment shall be purchased in accordance with the Department's policies and procedures pertaining to procurement.

### Procedure E: Storage

1. Chemical agents and other restraint or defensive equipment shall be stored in a secure location that is outside the secure perimeter of the facility, or, at a minimum, outside resident housing and program areas.

2. Law enforcement personnel entering the facility shall store their firearms, other dangerous weapons and chemical agents in the weapons locker or in another designated location that is properly secured and locked.

3. With prior authorization from the Superintendent or designee, law enforcement personnel may store their long guns in their vehicles provided they are secured in a weapons locker or the vehicle trunk.

### Procedure F: Disposal

1. The Superintendent, or designee, shall be responsible to authorize the disposal of chemical agents and other restraint or defensive equipment. The designated staff shall be responsible to carry out the disposal. Whenever an item is destroyed or otherwise disposed of, the person disposing of the item and a witness to the disposal shall complete a report describing the circumstances surrounding the disposal including the reason for the disposal and the method of disposal.

2. Staff shall comply with the manufacturer's instructions and specifications regarding the safe disposal of chemical agents.

3. The Superintendent, or designee, shall ensure the disposal of chemical agents and other restraint or defensive equipment shall not pose a hazard to persons or the environment.

## VII. PROFESSIONAL STANDARDS:

**ACA:**

| | |
|---|---|
| 4-JCF-2A-13 | Security items are stored in a secure but readily accessible depository outside of juvenile housing and activity areas. |
| 4-JCF-2A-15 | The facility maintains a written record of routine and emergency distribution of restraint equipment. |

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 9 of 10<br>6/1/11R<br>Confidential Policy |

**4-JCF-2A-19**   All special incidents, including but not limited to the taking of hostages, use of restraint equipment, or the use of physical force, are reported in writing, dated and signed by the staff person reporting the incident. The report is placed in the juvenile's case record and reviewed by the facility administrator and/or the parent agency.

**4-JCF-2A-27**   (MANDATORY) The level of authority, access, and conditions required for the availability, control and use of chemical agents and equipment related to its use must be specified. Chemical agents are used only with the authorization of the facility administrator, medical director, or designee.

1. Chemical agents and equipment related to its use are inventoried at least monthly to determine their condition and expiration dates.
2. Personnel using chemical agents to control juveniles submit written reports to the facility administrator or designee no later than the conclusion of the tour of duty.
3. All persons contaminated in an incident involving the use of a chemical agent must receive an immediate medical examination and treatment.

**4-JCF-2A-28**   Firearms are not permitted in the facility, except in emergency situations.

**4-JCF-2A-29**   (MANDATORY) The use of physical force is restricted to instances of justifiable self-defense, protection of others, protection of property, and prevention of escapes, and then only as a last resort in accordance with appropriate statutory authority. The agency has developed and implemented a plan to ensure that staff have the skills necessary to de-escalate situations and to reduce the need for physical force. In no event is physical force justifiable as punishment. Persons injured in an incident receive immediate examination and treatment. A written report is prepared following all uses of force and is submitted to administrative staff for review.

| POLICY TITLE: USE OF FORCE, GENERAL GUIDELINES | PAGE 1 OF 10 |
|---|---|
| POLICY NUMBER: 9.18 | **Confidential Policy** |
| CHAPTER 9: SECURITY AND CONTROL | |
| STATE of MAINE<br>DEPARTMENT OF CORRECTIONS<br><br>Approved by Commissioner: | PROFESSIONAL STANDARDS:<br><br>See Section VII |
| EFFECTIVE DATE:<br>February 1, 2002 | LATEST REVISION:<br>May 22, 2013 | CHECK ONLY IF<br>APA [   ] |

## I.   AUTHORITY

The Commissioner of Corrections adopts this policy pursuant to the authority contained in Title 34-A M.R.S.A. Section 1403, 3813, and 4106, and Title 17-A M.R.S.A. Sections 106, 107, and 108.

## II.   APPLICABILITY

All Departmental Juvenile Facilities

## III.   POLICY

The Department of Corrections recognizes that juvenile facility staff may encounter situations that require the use of physical force. It is, therefore, the policy of the Department that facility staff use only that physical force that the staff and others reasonably believes is necessary to bring an incident under control, while protecting the staff and others. Where circumstances permit, the staff shall use verbal, rather than physical, means to accomplish these purposes. **In no event is physical force justifiable as punishment.**

## IV.   CONTENTS

| | |
|---|---|
| Procedure A: | Use of Physical Force, General |
| Procedure B: | Use of Nondeadly Force by Non-Security Staff |
| Procedure C: | Use of Deadly Force by Non-Security Staff |
| Procedure D: | Use of Nondeadly Force by Security Staff |
| Procedure E: | Use of Deadly Force by Security Staff |
| Procedure F: | Video/Audio Recording Use of Force Incidents |
| Procedure G: | Medical Assistance |
| Procedure H: | Storage and Disposal |
| Procedure I: | Reporting and Documentation |
| Procedure J: | Post Incident |

## V.   ATTACHMENTS

Attachment A:   Situational Use of Force Options
Attachment B:   Disposal of Equipment
Attachment C:   Supervisor's Review, Use of Physical Force Report

## VI.   PROCEDURES

### Procedure A:   Use of Physical Force, General

1. The Department recognizes that facility staff may encounter a situation that requires the use of physical force. Physical force is physical action against another person that creates an imminent and substantial risk of causing bodily injury to that person. Bodily injury is physical pain, physical illness, or any impairment of physical condition.

2. Security staff (corrections officer, corrections supervisor, or correctional investigative officer) required to use physical force shall apply situational use-of-force options (see Attachment A, Situational Use of Force Options) while recognizing and reacting appropriately to enhanced or reduced levels of threat.

3. Prior to being assigned to job duties, facility staff responsible for the custody, care or treatment of residents shall be trained in the parts of this policy applicable to that staff. Prior to being assigned to job duties, security staff shall also receive training in and demonstrate the skills and judgment to apply situational use-of-force options while recognizing and reacting appropriately to enhanced or reduced levels of threat. Security staff shall receive additional training on an annual basis. Corrections supervisors shall receive additional training pertaining to the role of a supervisor in enforcing this policy.

4. All training shall be documented in the staff's training file. This documentation shall include, but not be limited to:

     a. Subject and topic areas trained in;
     b. Date training was received;
     c. Signature of person receiving training;
     d. Name of instructor; and
     e. Results of testing and/or performance evaluations.

5. Determining the appropriate response to a situation is a dynamic process, by which security staff assesses, plans, and responds to situations that threaten the safety of staff or others, the safe and effective operation of the facility, or the maintenance of custody. The assessment process begins with the situation immediately confronting security staff, and moves to the behavior of the resident and others and staff's perceptions and tactical considerations. Based on staff's assessment of the conditions, staff shall select from the available response options to best defuse the situation and bring it under control, while continuing to

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 2 of 10 Confidential Policy 5/22/13R |

determine whether his or her actions are appropriate and effective in bringing the particular situation under control.

6. Options available to security staff concerning the type of action to be used in response to a given situation include, but are not limited to, staff presence, verbal commands, approved compliance techniques (verbal de-escalation, directional contact, and control and restraint), handcuffs, chemical agents, electronic weapons (electronic restraining device or electronic immobilization device), canine, less- than-lethal munitions, and deadly force.

7. Security staff shall carry only handcuffs, chemical agents, electronic weapons, less-than-lethal munitions, firearms and other equipment issued by the Department. Security staff shall be trained in the use of the equipment prior to carrying or using said equipment. Security staff shall not make any modifications to issued equipment, unless recommended by the Department's Director of Security and approved by the Commissioner, or designee. Facility staff who are not security staff shall not carry handcuffs, chemical agents, electronic weapons, less-than-lethal munitions, firearms, or other restraint or defensive equipment or weapons.

8. Facility security staff authorized to use firearms shall adhere to Department Policy 9.24 (Juvenile Facility), Firearms.

**Procedure B:   Use of Nondeadly Force by Non-Security Staff**

1. Facility non-security staff who are responsible for the custody, care or treatment of residents are justified in using a reasonable degree of nondeadly force (any force which is not deadly force) when and to the extent the staff reasonably believes it is necessary:

   a. To defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful, nondeadly force;

   b. To prevent an escape from custody;

   c. To enforce the rules of the facility; or

   d. To thwart an imminent risk of suicide or the self-infliction of serious bodily injury. (Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health).

**Procedure C:   Use of Deadly Force by Non-Security Staff**

1. Facility non-security staff who are responsible for the custody, care or treatment of

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 3 of 10 Confidential Policy 5/22/13R |

residents are justified in using deadly force (physical force that a person uses with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury) when the staff reasonably believes it is necessary to defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful deadly force.

**Procedure D:    Use of Nondeadly Force by Security Staff**

1. Facility security staff are justified in using a reasonable degree of nondeadly force (any force which is not deadly force, including in the case of security staff only, use of a chemical agent, electronic weapon, canine, or less-than-lethal munition) using approved techniques and equipment when and to the extent the staff reasonably believes it to be necessary:

   a. To defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful, nondeadly force;

   b. To prevent an escape from custody or to apprehend an escapee;

   c. To enforce the rules of the facility; or

   d. To thwart an imminent risk of suicide or the self-infliction of serious bodily injury. (Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health.)

2. In the case of security staff whose issued equipment is unavailable, malfunctioning, or inadequate, the staff is authorized to use another means to defend the staff or a third person from what the staff reasonably believes to be the imminent use of unlawful nondeadly force.

3. Staff may not use a chemical agent, an electronic weapon, or a less than lethal munition unless the Commissioner, or designee, has given prior specific authorization to do so in the event its use becomes necessary to resolve the situation. The only exception is that security staff may use O/C spray without this prior authorization if reasonably believed to be necessary to protect the staff or a third person from an imminent risk of serious bodily injury.

4. Prior to using a chemical agent, electronic weapon, or a less-than-lethal munition, staff shall make reasonable efforts to advise the resident that, if the resistive or assaultive behavior does not stop immediately, the item will be used.

5. When a use of physical force is planned in advance or there is a situation that could give rise to the need to be prepared to use physical force, prior to using a chemical agent, electronic weapon, a less-than-lethal munition, or any use of force

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 4 of 10 Confidential Policy 5/22/13R |

technique that might cause bodily injury, the Juvenile Facility Operations Supervisor, or other supervisory staff, shall contact the facility health care staff for possible precautions related to the use of the item or technique.

**Procedure E:    Use of Deadly Force by Security Staff**

1. Facility security staff are justified in using deadly force (physical force that a person uses with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury) against residents of Departmental juvenile facilities using approved techniques and equipment when staff reasonably believes such force is necessary to defend the staff or a third person from what the staff person reasonably believes is the imminent use of unlawful deadly force; or

2. In the case of security staff whose issued equipment is unavailable, malfunctioning, or inadequate, the staff is authorized to use another means to defend the staff or a third person from what the staff reasonably believes to be the imminent use of unlawful deadly force.

**Procedure F:   Video/Audio Recording Use of Force Incidents**

1. The Chief Administrative Officer, or designee, shall ensure that a sufficient number of security staff are trained in the use of hand-held video/audio cameras to ensure the availability of trained staff on a 24/7 basis.

2. The Chief Administrative Officer, or designee, shall ensure that at the beginning of each shift trained staff complete the following camera check with respect to every facility hand-held camera:

    a. Inspect the physical condition of the camera for damage;
    b. Ensure the battery in the camera is fully charged and all replacement batteries are charged;
    c. Ensure a new disc/memory card is in the camera;
    d. Ensure the on-screen date/time stamp is accurate;
    e. Ensure the integrated light is operating properly;
    f. Run a sample recording to confirm the operability of the equipment and the quality of the recording, both video and audio; and
    g. Notify Central Control of the completion of the camera check, which shall then be logged in the Central Control log book.

3. When a use of physical force is planned in advance or there is a situation that could give rise to the need to be prepared to use physical force, such as escorting a resident to observation, the Juvenile Facility Operations Supervisor, or other supervisory staff, shall ensure that a hand-held video/audio camera is used to record the incident.

4. The Juvenile Facility Operations Supervisor, or other supervisory staff, shall ensure

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 5 of 10 Confidential Policy 5/22/13R |

that the staff assigned to operate the camera is trained in the use of the camera and auxiliary functions, such as battery replacement.

5. The Juvenile Facility Operations Supervisor, or other supervisory staff, shall ensure that the camera is operable prior to the initiation of the planned use of force or the initiation of the situation that could give rise to the need to use force.

6. The camera operator shall begin recording the incident by identifying him/herself as the camera operator and shall proceed to record the entire incident from beginning (the supervisor's briefing) to end (the resident's placement in a secured area and the supervisor's concluding statement). The camera shall remain focused on the resident throughout the duration of the incident. Every effort shall be made to ensure that the view of the resident remains unblocked.

7. The camera operator shall record any assessment of the resident's medical and mental health by facility health care staff, being sure to record a full view of the resident during the medical assessment and being sure to record a clear audio during both assessments.

8. Any time the camera has to be turned off while in the process of recording, the camera operator shall give an audible explanation (e.g., "replacing battery," "replacing disc or memory card," etc.) prior to turning the camera off. The camera operator shall audibly state the time just prior to turning the camera off and also state the time immediately after resuming the recording.

9. If damage to or malfunction of the camera causes the camera to be replaced during the incident, an audible explanation shall be given immediately after resuming the recording on the replacement camera, as well as the time the original camera malfunctioned and the time the recording was resumed with the replacement camera.

10. When a use of physical force is not planned in advance and it is not a situation that could give rise to the need to be prepared to use physical force, but the use of physical force becomes necessary due to a spontaneous incident, every effort shall be made to obtain a hand-held video/audio camera to record as much of the incident as possible. The camera operator shall follow the prior procedures to the extent possible.

11. Staff failing to record incidents as required by this policy, tampering with recording equipment, altering recordings, removing, copying, or transmitting recordings without authorization from the Commissioner, or designee, or the facility Chief Administrative Officer, or using recording equipment for a use other than one authorized in this policy or other Departmental policies may be subject to disciplinary action and/or criminal prosecution.

**Procedure G:  Medical and Mental Health Assistance**

1. The Juvenile Facility Operations Supervisor, or other supervisory staff, shall have

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 6 of 10 Confidential Policy 5/22/13R |

the resident medically and mentally assessed as soon as possible after any incident involving the use of physical force (physical action against another person that creates an imminent and substantial risk of causing bodily injury to that person).

2. If the resident is transported to another Departmental facility, the Juvenile Facility Operations Supervisor, or other supervisory staff, shall notify the receiving facility staff of any force used against the resident, and the resident shall be medically and mentally assessed as soon as possible at the receiving facility.

**Procedure H:   Storage and Disposal**

1. Security staff shall adhere to Department Policy 9.24, Firearms, for the storage and disposal of firearms and related equipment.

2. When not being carried, handcuffs, chemical agents, electronic weapons, less-than-lethal munitions and other restraint or defensive equipment shall be stored in a secure location that is outside the secure perimeter of the facility, or, at a minimum, outside resident housing and program areas.

3. The Chief Administrative Officer, or designee, shall be responsible to authorize the disposal of handcuffs, chemical agents, electronic weapons, less-than-lethal munitions and other restraint or defensive equipment.  Designated staff shall be responsible to carry out the disposal.  Whenever the item is destroyed or otherwise disposed of, the person disposing of the item and shall complete a report using a Disposal of Equipment form (see Attachment B) describing the circumstances surrounding the disposal, including the reason for the disposal and the method of disposal.  Disposal shall be witnessed and the witness shall sign the report.

4. Staff shall comply with the manufacturer's instructions and specifications regarding safe disposal and shall ensure the disposal does not pose a hazard to persons or the environment.

**Procedure I:    Reporting and Documentation**

1. Security staff shall adhere to Department Policy 9.24, Firearms, for the reporting and documentation of the use of firearms, including when staff draws, points, or otherwise uses their firearm.

2. Staff shall verbally notify the Chief Administrative Officer, or designee, as soon as possible of any use of force resulting in bodily injury, including any use of chemical agents, electronic weapons, less-than-lethal munitions, and any use of firearms, and any medical services rendered.

3. Any staff involved in a use of force incident shall complete an incident report and submit it to their supervisor prior to the end of their shift, unless the staff person(s)

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 7 of 10 Confidential Policy 5/22/13R |

are unable to complete the incident report due to injury, or other reasons as determined by the Juvenile Facility Operations Supervisor.

4. The Juvenile Facility Operations Supervisor, or other supervisory staff, shall complete the Supervisor's Review, Use of Physical Force Report (Attachment C) and submit it to the facility Chief Administrative Officer, or designee, no later than the end of their shift. If any staff involved in the incident is not able to complete a report, it shall be documented in the Supervisor's Review, Use of Physical Force Report explaining why their report is not complete or not able to be included.

5. Documentation of the use of force shall include:

   a. Date, time, and location of the incident;
   b. The names of all persons involved in or, to the extent practicable, witnessing the incident;
   c. A description of the incident in which force was used and justification for the same;
   d. The type of force used, by whom, against whom;
   e. Identification of any equipment and/or other item used;
   f. If applicable, a description of the bodily injury;
   g. If applicable date, time, and identity of medical staff notified and any written reports by medical staff; and
   h. If applicable, photographs and/or audio/video recordings, including from the hand-held camera, surveillance video equipment, and any other recordings.

6. The Chief Administrative Officer, or designee, shall review all documentation concerning the use of force, including any photographs and/or audio/video recordings.

7. The Chief Administrative Officer, or designee, shall forward the Supervisor's Review, Use of Physical Force Report to the Commissioner, or designee, for further review within three (3) business days, and shall make available at the facility any photographs, audio/video recordings, or other evidence upon the request of the Commissioner, or designee.

9. The Chief Administrative Officer, or designee, shall ensure that any evidence related to the use of force incident, including any audio/video recordings or photographs, are secured, locked and stored as evidence in the facility evidence repository, following all chain of custody protocols.

9. In any incident in which deadly force is used, regardless of whether death occurs, the Commissioner, or designee, shall ensure an internal or external investigation is conducted to determine compliance with Maine Statutes and this policy, its procedures, and training. The Commissioner, or designee, may refer any other use of force incident for an internal investigation.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 8 of 10 Confidential Policy 5/22/13R |

10. Every use of force by staff resulting in serious bodily injury or death shall be immediately reported by the Chief Administrative Officer, or designee, to the Commissioner, or Director of Operations or Director of Security, who shall notify the Investigations Division of the Attorney General's Office as soon as possible.

11. The Commissioner, or designee, shall refer a report of use of excessive force that is substantiated after an investigation to the appropriate criminal prosecuting authority. i.e., the Attorney General's Office or a District Attorney's office. If the substantiated report is one of use of excessive force by a corrections officer or correctional investigative officer, the report shall also be referred to the Maine Criminal Justice Academy.

### Procedure J: Post Incident

1. In all instances involving the use of deadly force, regardless of whether death or bodily injury occurs, the Office of the Attorney General's Protocol on the Reporting and Investigation of the Use of Force shall be followed.

2. When a staff use of force causes death, the staff shall be placed on administrative leave. Said leave shall continue until it is determined by a licensed mental health professional that the staff is ready to return to duty and it is determined that no administrative disciplinary action or criminal proceedings will be pursued against the staff. Staff involved in any other use of force incident may be placed on administrative leave.

3. All staff involved in a deadly force incident shall be afforded the opportunity to attend a critical stress debriefing, as soon as reasonably possible.

## VIII. PROFESSIONAL STANDARDS

**ACA:**

| | |
|---|---|
| 4-JCF-2A-13 | Security items are stored in a secure but readily accessible depository outside of juvenile housing and activity areas. |
| 4-JCF-2A-15 | The facility maintains a written record of routine and emergency distribution of restraint equipment. |
| 4-JCF-2A-19 | All special incidents, including but not limited to the taking of hostages, use of restraint equipment, or the use of physical force, are reported in writing, dated and signed by the staff person reporting the incident. The report is placed in the juvenile's case record and reviewed by the facility administrator and/or the parent agency. |
| 4-JCF-2A-27 | (MANDATORY) The level of authority, access, and conditions required for the availability, control and use of chemical agents and equipment related to its use must be specified. Chemical agents are used only with the authorization of the facility administrator, medical director, or designee. |

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 9 of 10 Confidential Policy 5/22/13R |

1. Chemical agents and equipment related to its use are inventoried at least monthly to determine their condition and expiration dates.
2. Personnel using chemical agents to control juveniles submit written reports to the facility administrator or designee no later than the conclusion of the tour of duty.
3. All persons contaminated in an incident involving the use of a chemical agent must receive an immediate medical examination and treatment.

**4-JCF-2A-28** Firearms are not permitted in the facility, except in emergency situations.

**4-JCF-2A-29** (MANDATORY) The use of physical force is restricted to instances of justifiable self-defense, protection of others, protection of property, and prevention of escapes, and then only as a last resort in accordance with appropriate statutory authority. The agency has developed and implemented a plan to ensure that staff have the skills necessary to de-escalate situations and to reduce the need for physical force. In no event is physical force justifiable as punishment. Persons injured in an incident receive immediate examination and treatment. A written report is prepared following all uses of force and is submitted to administrative staff for review.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 10 of 10 Confidential Policy 5/22/13R |

| POLICY TITLE: USE OF FORCE, GENERAL GUIDELINES | PAGE 1 OF 10 |
|---|---|
| POLICY NUMBER: 9.18 | **Confidential Policy** |
| CHAPTER 9: SECURITY AND CONTROL | |

| | STATE of MAINE<br>DEPARTMENT OF CORRECTIONS<br>**Approved by Commissioner:**<br><br>_DR. Joseph R. Fitzpatrick_ | PROFESSIONAL<br>STANDARDS:<br><br>**See Section VII** |
|---|---|---|

| EFFECTIVE DATE:<br>**February 1, 2002** | LATEST REVISION:<br>**September 28, 2017** | CHECK ONLY IF<br>APA [   ] |
|---|---|---|

## I.  AUTHORITY

The Commissioner of Corrections adopts this policy pursuant to the authority contained in Title 34-A M.R.S.A. Section 1403, 3813, and 4106, and Title 17-A M.R.S.A. Sections 106, 107, and 108.

## II.  APPLICABILITY

All Departmental Juvenile Facilities

## III.  POLICY

The Department of Corrections recognizes that juvenile facility staff may encounter situations that require the use of physical force.  It is, therefore, the policy of the Department that facility staff use only that physical force that the staff and others reasonably believes is necessary to bring an incident under control, while protecting the staff and others.  Where circumstances permit, the staff shall use verbal, rather than physical, means to accomplish these purposes.  **In no event is physical force justifiable as punishment.**

## IV.  CONTENTS

Procedure A:    Use of Physical Force, General
Procedure B:    Use of Nondeadly Force by Non-Security Staff
Procedure C:    Use of Deadly Force by Non-Security Staff
Procedure D:    Use of Nondeadly Force by Security Staff
Procedure E:    Use of Deadly Force by Security Staff
Procedure F:    Video/Audio Recording Use of Force Incidents
Procedure G:    Medical and Mental Health Assistance
Procedure H:    Storage and Disposal
Procedure I:    Reporting and Documentation
Procedure J:    Post Incident

## V.    ATTACHMENTS

Attachment A:    Situational Use of Force Options
Attachment B:    Disposal of Equipment
Attachment C:    Supervisor's Review, Use of Physical Force Report

## VI.    PROCEDURES

### Procedure A:    Use of Physical Force, General

1.    The Department recognizes that facility staff may encounter a situation that requires the use of physical force.  Physical force is physical action against another person that creates an imminent and substantial risk of causing bodily injury to that person.  Bodily injury is physical pain, physical illness, or any impairment of physical condition.

2.    Security staff (corrections officer, corrections supervisor, or correctional investigative officer) required to use physical force shall apply situational use-of-force options (see Attachment A, Situational Use of Force Options) while recognizing and reacting appropriately to enhanced or reduced levels of threat.

3.    Prior to being assigned to job duties, facility staff responsible for the custody, care or treatment of residents shall be trained in the parts of this policy applicable to that staff.  Prior to being assigned to job duties, security staff shall also receive training in and demonstrate the skills and judgment to apply situational use-of-force options while recognizing and reacting appropriately to enhanced or reduced levels of threat.  Security staff shall receive additional training on an annual basis.  Corrections supervisors shall receive additional training pertaining to the role of a supervisor in enforcing this policy.

4.    All training shall be documented in the staff's training file.  This documentation shall include, but not be limited to:

   a.  subject and topic areas trained in;

   b.  date training was received;

   c.  signature of person receiving training;

   d.  name of instructor; and

   e.  results of testing and/or performance evaluations.

5.    Determining the appropriate response to a situation is a dynamic process, by which security staff assesses, plans, and responds to situations that threaten the safety of staff or others, the safe and effective operation of the facility, or the maintenance of custody.  The assessment process begins with the situation immediately confronting security staff, and moves to the behavior of the resident and others and staff's perceptions and tactical considerations.  Based on staff's

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| **9.18   Use of Force, General Guidelines** | **9. Security and Control** | **Page 2 of 10**<br>**Confidential Policy**<br>**9/28/17R** |

assessment of the conditions, staff shall select from the available response options to best defuse the situation and bring it under control, while continuing to determine whether his or her actions are appropriate and effective in bringing the particular situation under control.

6. Options available to security staff concerning the type of action to be used in response to a given situation include, but are not limited to, staff presence, verbal commands, approved compliance techniques (verbal de-escalation, directional contact, and control and restraint), handcuffs, chemical agents, electronic weapons (electronic restraining device or electronic immobilization device), canine, less-than-lethal munitions, and deadly force.

7. Security staff shall carry only handcuffs, chemical agents, electronic weapons, less-than-lethal munitions, firearms and other equipment issued by the Department.  Security staff shall be trained in the use of the equipment prior to carrying or using said equipment.  Security staff shall not make any modifications to issued equipment, unless recommended by the Department's Director of Security and approved by the Commissioner, or designee.  Facility staff who are not security staff shall not carry handcuffs, chemical agents, electronic weapons, less-than-lethal munitions, firearms, or other restraint or defensive equipment or weapons.

8. Facility security staff authorized to use firearms shall adhere to Department Policy 9.24 (JF), Firearms.

**Procedure B:    Use of Nondeadly Force by Non-Security Staff**

1. Facility non-security staff who are responsible for the custody, care or treatment of residents are justified in using a reasonable degree of nondeadly force (any force which is not deadly force) when and to the extent the staff reasonably believes it is necessary:

    a. to defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful, nondeadly force;

    b. to prevent an escape from custody;

    c. to enforce the rules of the facility; or

    d. to thwart an imminent risk of suicide or the self-infliction of serious bodily injury.  (Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health).

**Procedure C:    Use of Deadly Force by Non-Security Staff**

1. Facility non-security staff who are responsible for the custody, care or treatment of residents are justified in using deadly force (physical force that a person uses

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | **Page 3 of 10**<br>**Confidential Policy**<br>**9/28/17R** |

with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury) when the staff reasonably believes it is necessary to defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful deadly force.

**Procedure D:   Use of Nondeadly Force by Security Staff**

1.  Facility security staff are justified in using a reasonable degree of nondeadly force (any force which is not deadly force, including in the case of security staff only, use of a chemical agent, electronic weapon, canine, or less-than-lethal munition) using approved techniques and equipment when and to the extent the staff reasonably believes it to be necessary:

    a.  to defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful, nondeadly force;

    b.  to prevent an escape from custody or to apprehend an escapee;

    c.  to enforce the rules of the facility; or

    d.  to thwart an imminent risk of suicide or the self-infliction of serious bodily injury.  (Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health.)

2.  In the case of security staff whose issued equipment is unavailable, malfunctioning, or inadequate, the staff is authorized to use another means to defend the staff or a third person from what the staff reasonably believes to be the imminent use of unlawful nondeadly force.

3.  Staff may not use a chemical agent, electronic weapon, or less-than-lethal munition unless the Commissioner, or designee, has given prior specific authorization to do so in the event its use becomes necessary to resolve the situation.

4.  Prior to using a chemical agent, electronic weapon, or a less-than-lethal munition, staff shall make reasonable efforts to advise the resident that, if the resistive or assaultive behavior does not stop immediately, the item will be used.

5.  When a use of physical force is planned in advance or there is a situation that could give rise to the need to be prepared to use physical force, prior to using a chemical agent, electronic weapon, a less-than-lethal munition, or any use of force technique that might cause bodily injury, the Juvenile Facility Operations Supervisor (JFOS), or other supervisory staff, shall contact the facility health care staff for possible precautions related to the use of the item or technique.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | **Page 4 of 10**<br>**Confidential Policy**<br>**9/28/17R** |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          MDOC004059

**Procedure E:    Use of Deadly Force by Security Staff**

1.    Facility security staff are justified in using deadly force (physical force that a person uses with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury) against residents of Departmental juvenile facilities using approved techniques and equipment when staff reasonably believes such force is necessary to defend the staff or a third person from what the staff person reasonably believes is the imminent use of unlawful deadly force; or

2.    In the case of security staff whose issued equipment is unavailable, malfunctioning, or inadequate, the staff is authorized to use another means to defend the staff or a third person from what the staff reasonably believes to be the imminent use of unlawful deadly force.

**Procedure F:    Video/Audio Recording Use of Force Incidents**

1.    The Chief Administrative Officer, or designee, shall ensure that a sufficient number of security staff are trained in the use of hand-held video/audio cameras to ensure the availability of trained staff on a 24/7 basis.

2.    The Chief Administrative Officer, or designee, shall ensure that at the beginning of each shift trained staff complete the following camera check with respect to every facility hand-held camera:

   a.  inspect the physical condition of the camera for damage;

   b.  ensure the battery in the camera is fully charged and all replacement batteries are charged;

   c.  ensure a new disc/memory card is in the camera;

   d.  ensure the on-screen date/time stamp is accurate;

   e.  ensure the integrated light is operating properly;

   f.  run a sample recording to confirm the operability of the equipment and the quality of the recording, both video and audio; and

   g.  notify Central Control of the completion of the camera check, which shall then be logged in the Central Control log book.

3.    When a use of physical force is planned in advance or there is a situation that could give rise to the need to be prepared to use physical force, such as escorting a resident to observation, the Juvenile Facility Operations Supervisor (JFOS), or other supervisory staff, shall ensure that a hand-held video/audio camera is used to record the incident.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | **Page 5 of 10**<br>**Confidential Policy**<br>**9/28/17R** |

4.   The Juvenile Facility Operations Supervisor (JFOS), or other supervisory staff, shall ensure that the staff assigned to operate the camera is trained in the use of the camera and auxiliary functions, such as battery replacement.

5.   The JFOS, or other supervisory staff, shall ensure that the camera is operable prior to the initiation of the planned use of force or the initiation of the situation that could give rise to the need to use force.

6.   The camera operator shall begin recording the incident by identifying him/herself as the camera operator and shall proceed to record the entire incident from beginning (the supervisor's briefing) to end (the resident's placement in a secured area and the supervisor's concluding statement).  The camera shall remain focused on the resident throughout the duration of the incident.  Every effort shall be made to ensure that the view of the resident remains unblocked.

7.   The camera operator shall record any assessment of the resident's medical and mental health by facility health care staff, being sure to record a full view of the resident during the medical assessment and being sure to record a clear audio during both assessments.

8.   Any time the camera has to be turned off while in the process of recording, the camera operator shall give an audible explanation (e.g., "replacing battery," "replacing disc or memory card," etc.) prior to turning the camera off.  The camera operator shall audibly state the time just prior to turning the camera off and also state the time immediately after resuming the recording.

9.   If damage to or malfunction of the camera causes the camera to be replaced during the incident, an audible explanation shall be given immediately after resuming the recording on the replacement camera, as well as the time the original camera malfunctioned and the time the recording was resumed with the replacement camera.

10.  When a use of physical force is not planned in advance and it is not a situation that could give rise to the need to be prepared to use physical force, but the use of physical force becomes necessary due to a spontaneous incident, every effort shall be made to obtain a hand-held video/audio camera to record as much of the incident as possible.  The camera operator shall follow the prior procedures to the extent possible.

11.  Staff failing to record incidents as required by this policy, tampering with recording equipment, altering recordings, removing, copying, or transmitting recordings without authorization from the Commissioner, or designee, or the facility Chief Administrative Officer, or using recording equipment for a use other than one authorized in this policy or other Departmental policies may be subject to disciplinary action and/or criminal prosecution.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | **Page 6 of 10**<br>**Confidential Policy**<br>**9/28/17R** |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          MDOC004061

**Procedure G:    Medical and Mental Health Assistance**

1.    The Juvenile Facility Operations Supervisor (JFOS), or other supervisory staff, shall have the resident medically and mentally assessed as soon as possible after any incident involving the use of physical force (physical action against another person that creates an imminent and substantial risk of causing bodily injury to that person).

2.    If the resident is transported to another Departmental facility, the JFOS, or other supervisory staff, shall notify the receiving facility staff of any force used against the resident, and the resident shall be medically and mentally assessed as soon as possible at the receiving facility.

**Procedure H:    Storage and Disposal**

1.    Security staff shall adhere to Department Policy (JF) 9.24, Firearms, for the storage and disposal of firearms and related equipment.

2.    When not being carried, handcuffs, chemical agents, electronic weapons, less-than-lethal munitions and other restraint or defensive equipment shall be stored in a secure location that is outside the secure perimeter of the facility, or, at a minimum, outside resident housing and program areas.

3.    The Chief Administrative Officer, or designee, shall be responsible to authorize the disposal of handcuffs, chemical agents, electronic weapons, less-than-lethal munitions and other restraint or defensive equipment.  Designated staff shall be responsible to carry out the disposal.  Whenever the item is destroyed or otherwise disposed of, the person disposing of the item and shall complete a report using a Disposal of Equipment form (Attachment B) describing the circumstances surrounding the disposal, including the reason for the disposal and the method of disposal.  Disposal shall be witnessed and the witness shall sign the report.

4.    Staff shall comply with the manufacturer's instructions and specifications regarding safe disposal and shall ensure the disposal does not pose a hazard to persons or the environment.

**Procedure I:    Reporting and Documentation**

1.    Security staff shall adhere to Department Policy (JF) 9.24, Firearms, for the reporting and documentation of the use of firearms, including when staff draws, points, or otherwise uses their firearm.

2.    Staff shall verbally notify the Chief Administrative Officer, or designee, as soon as possible of any use of force resulting in bodily injury, including any use of chemical agents, electronic weapons, less-than-lethal munitions, and any use of firearms, and any medical services rendered.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | **Page 7 of 10**<br>**Confidential Policy**<br>**9/28/17R** |

3. Any staff involved in a use of force incident shall complete an incident report and submit it to their supervisor prior to the end of their shift, unless the staff person(s) are unable to complete the incident report due to injury, or other reasons as determined by the Juvenile Facility Operations Supervisor (JFOS).

4. The JFOS, or other supervisory staff, shall complete the Supervisor's Review, Use of Physical Force Report (Attachment C) and submit it to the facility Chief Administrative Officer, or designee, no later than the end of their shift. If any staff involved in the incident is not able to complete a report, it shall be documented in the Supervisor's Review, Use of Physical Force Report explaining why their report is not complete or not able to be included.

5. Documentation of the use of force shall include:

   a. date, time, and location of the incident;

   b. the names of all persons involved in or, to the extent practicable, witnessing the incident;

   c. a description of the incident in which force was used and justification for the same;

   d. the type of force used, by whom, against whom;

   e. identification of any equipment and/or other item used;

   f. if applicable, a description of the bodily injury;

   g. if applicable date, time, and identity of medical staff notified and any written reports by medical staff; and

   h. if applicable, photographs and/or audio/video recordings, including from the hand-held camera, surveillance video equipment, and any other recordings.

6. The Chief Administrative Officer, or designee, shall review all documentation concerning the use of force, including any photographs and/or audio/video recordings.

7. The Chief Administrative Officer, or designee, shall forward the Supervisor's Review, Use of Physical Force Report to the Commissioner, or designee, for further review within three (3) business days, and shall make available at the facility any photographs, audio/video recordings, or other evidence upon the request of the Commissioner, or designee.

8. The Chief Administrative Officer, or designee, shall ensure that any evidence related to the use of force incident, including any audio/video recordings or photographs, are secured, locked and stored as evidence in the facility evidence repository, following all chain of custody protocols.

9. In any incident in which deadly force is used, regardless of whether death occurs, the Commissioner, or designee, shall ensure an internal or external

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | **Page 8 of 10**<br>**Confidential Policy**<br>**9/28/17R** |

investigation is conducted to determine compliance with Maine Statutes and this policy, its procedures, and training. The Commissioner, or designee, may refer any other use of force incident for an internal investigation.

10. Every use of force by staff resulting in serious bodily injury or death shall be immediately reported by the Chief Administrative Officer, or designee, to the Commissioner, or Director of Operations or Director of Security, who shall notify the Investigations Division of the Attorney General's Office as soon as possible.

11. The Commissioner, or designee, shall refer a report of use of excessive force that is substantiated after an investigation to the appropriate criminal prosecuting authority. i.e., the Attorney General's Office or a District Attorney's office. If the substantiated report is one of use of excessive force by a corrections officer or correctional investigative officer, the report shall also be referred to the Maine Criminal Justice Academy.

**Procedure J:    Post Incident**

1. In all instances involving the use of deadly force, regardless of whether death or bodily injury occurs, the Office of the Attorney General's Protocol on the Reporting and Investigation of the Use of Force shall be followed.

2. When a staff use of force causes death, the staff shall be placed on administrative leave. Said leave shall continue until it is determined by a licensed mental health professional that the staff is ready to return to duty and it is determined that no administrative disciplinary action or criminal proceedings will be pursued against the staff. Staff involved in any other use of force incident may be placed on administrative leave.

3. All staff involved in a deadly force incident shall be afforded the opportunity to attend a critical stress debriefing, as soon as reasonably possible.

## VII.    PROFESSIONAL STANDARDS

**ACA:**

**4-JCF-2A-13**    **Security items are stored in a secure but readily accessible depository outside of juvenile housing and activity areas.**

**4-JCF-2A-15**    **The facility maintains a written record of routine and emergency distribution of restraint equipment.**

**4-JCF-2A-19**    **All special incidents, including but not limited to the taking of hostages, use of restraint equipment, or the use of physical force, are reported in writing, dated and signed by the staff person reporting the incident. The report is placed in the juvenile's case record and reviewed by the facility administrator and/or the parent agency.**

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | Page 9 of 10<br>**Confidential Policy**<br>**9/28/17R** |

**4-JCF-2A-27**  (MANDATORY)  The level of authority, access, and conditions required for the availability, control and use of chemical agents and equipment related to its use must be specified.  Chemical agents are used only with the authorization of the facility administrator, medical director, or designee.

1. Chemical agents and equipment related to its use are inventoried at least monthly to determine their condition and expiration dates.

2. Personnel using chemical agents to control juveniles submit written reports to the facility administrator or designee no later than the conclusion of the tour of duty.

3. All persons contaminated in an incident involving the use of a chemical agent must receive an immediate medical examination and treatment.

**4-JCF-2A-28**  Firearms are not permitted in the facility, except in emergency situations.

**4-JCF-2A-29**  (MANDATORY)  The use of physical force is restricted to instances of justifiable self-defense, protection of others, protection of property, and prevention of escapes, and then only as a last resort in accordance with appropriate statutory authority.  The agency has developed and implemented a plan to ensure that staff have the skills necessary to de-escalate situations and to reduce the need for physical force.  In no event is physical force justifiable as punishment.  Persons injured in an incident receive immediate examination and treatment.  A written report is prepared following all uses of force and is submitted to administrative staff for review.

**4-JCF-6E-10**  All juvenile careworkers receive at least 40 hours of annual training.  This training shall include at a minimum the following areas:

1. Standards of conduct/ethics
2. Security/safety/fire/medical/emergency procedures
3. Supervision of offenders including training on sexual abuse and assault prevention
4. Use of force

Additional topics shall be included based upon a needs assessment of both staff and institution requirements.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18   Use of Force, General Guidelines | 9. Security and Control | Page 10 of 10<br>**Confidential Policy**<br>**9/28/17R** |

| POLICY TITLE: USE OF FORCE, GENERAL GUIDELINES | PAGE <u>1</u> OF <u>10</u> |
|---|---|
| POLICY NUMBER: 9.18 | <u>Confidential Policy</u> |
| CHAPTER 9: SECURITY AND CONTROL | |

| | STATE of MAINE<br>DEPARTMENT OF CORRECTIONS<br><br>Approved by Commissioner:<br><br>*Joseph Ponte* | PROFESSIONAL STANDARDS:<br><br>See Section VII |
|---|---|---|
| **EFFECTIVE DATE:**<br>**February 1, 2002** | **LATEST REVISION:**<br>**February 20, 2014** | **CHECK ONLY IF**<br>**APA [    ]** |

## I.      AUTHORITY

The Commissioner of Corrections adopts this policy pursuant to the authority contained in Title 34-A M.R.S.A. Section 1403, 3813, and 4106, and Title 17-A M.R.S.A. Sections 106, 107, and 108.

## II.      APPLICABILITY

All Departmental Juvenile Facilities

## III.      POLICY

The Department of Corrections recognizes that juvenile facility staff may encounter situations that require the use of physical force.  It is, therefore, the policy of the Department that facility staff use only that physical force that the staff and others reasonably believes is necessary to bring an incident under control, while protecting the staff and others.  Where circumstances permit, the staff shall use verbal, rather than physical, means to accomplish these purposes.  **In no event is physical force justifiable as punishment.**

## IV.      CONTENTS

Procedure A:      Use of Physical Force, General
Procedure B:      Use of Nondeadly Force by Non-Security Staff
Procedure C:      Use of Deadly Force by Non-Security Staff
Procedure D:      Use of Nondeadly Force by Security Staff
Procedure E:      Use of Deadly Force by Security Staff
Procedure F:      Video/Audio Recording Use of Force Incidents
Procedure G:      Medical and Mental Health Assistance
Procedure H:      Storage and Disposal
Procedure I:      Reporting and Documentation
Procedure J:      Post Incident

## V.      ATTACHMENTS

Attachment A:    Situational Use of Force Options
Attachment B:    Disposal of Equipment
Attachment C:    Supervisor's Review, Use of Physical Force Report

## VI.    PROCEDURES

### Procedure A:    Use of Physical Force, General

1. The Department recognizes that facility staff may encounter a situation that requires the use of physical force.  Physical force is physical action against another person that creates an imminent and substantial risk of causing bodily injury to that person.  Bodily injury is physical pain, physical illness, or any impairment of physical condition.

2. Security staff (corrections officer, corrections supervisor, or correctional investigative officer) required to use physical force shall apply situational use-of-force options (see Attachment A, Situational Use of Force Options) while recognizing and reacting appropriately to enhanced or reduced levels of threat.

3. Prior to being assigned to job duties, facility staff responsible for the custody, care or treatment of residents shall be trained in the parts of this policy applicable to that staff.  Prior to being assigned to job duties, security staff shall also receive training in and demonstrate the skills and judgment to apply situational use-of-force options while recognizing and reacting appropriately to enhanced or reduced levels of threat. Security staff shall receive additional training on an annual basis. Corrections supervisors shall receive additional training pertaining to the role of a supervisor in enforcing this policy.

4. All training shall be documented in the staff's training file.  This documentation shall include, but not be limited to:

   a. Subject and topic areas trained in;
   b. Date training was received;
   c. Signature of person receiving training;
   d. Name of instructor; and
   e. Results of testing and/or performance evaluations.

5. Determining the appropriate response to a situation is a dynamic process, by which security staff assesses, plans, and responds to situations that threaten the safety of staff or others, the safe and effective operation of the facility, or the maintenance of custody. The assessment process begins with the situation immediately confronting security staff, and moves to the behavior of the resident and others and staff's perceptions and tactical considerations.  Based on staff's assessment of the conditions, staff shall select from the available response options to best defuse the situation and bring it under control, while continuing to determine whether his or her actions are appropriate and effective in bringing the

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 2 of 10 <br> **Confidential Policy** <br> 2/20/14R |

particular situation under control.

6. Options available to security staff concerning the type of action to be used in response to a given situation include, but are not limited to, staff presence, verbal commands, approved compliance techniques (verbal de-escalation, directional contact, and control and restraint), handcuffs, chemical agents, electronic weapons (electronic restraining device or electronic immobilization device), canine, less- than-lethal munitions, and deadly force.

7. Security staff shall carry only handcuffs, chemical agents, electronic weapons, less-than-lethal munitions, firearms and other equipment issued by the Department.  Security staff shall be trained in the use of the equipment prior to carrying or using said equipment.  Security staff shall not make any modifications to issued equipment, unless recommended by the Department's Director of Security and approved by the Commissioner, or designee.  Facility staff who are not security staff shall not carry handcuffs, chemical agents, electronic weapons, less-than-lethal munitions, firearms, or other restraint or defensive equipment or weapons.

8. Facility security staff authorized to use firearms shall adhere to Department Policy 9.24 (Juvenile Facility), Firearms.

**Procedure B:    Use of Nondeadly Force by Non-Security Staff**

1. Facility non-security staff who are responsible for the custody, care or treatment of residents are justified in using a reasonable degree of nondeadly force (any force which is not deadly force) when and to the extent the staff reasonably believes it is necessary:

    a. To defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful, nondeadly force;

    b. To prevent an escape from custody;

    c. To enforce the rules of the facility; or

    d. To thwart an imminent risk of suicide or the self-infliction of serious bodily injury. (Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health).

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, <br>     General Guidelines | 9. Security and Control | Page 3 of 10 <br> **Confidential Policy** <br> **2/20/14R** |

**Procedure C:  Use of Deadly Force by Non-Security Staff**

1. Facility non-security staff who are responsible for the custody, care or treatment of residents are justified in using deadly force (physical force that a person uses with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury) when the staff reasonably believes it is necessary to defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful deadly force.

**Procedure D:  Use of Nondeadly Force by Security Staff**

1. Facility security staff are justified in using a reasonable degree of nondeadly force (any force which is not deadly force, including in the case of security staff only, use of a chemical agent, electronic weapon, canine, or less-than-lethal munition) using approved techniques and equipment when and to the extent the staff reasonably believes it to be necessary:

    a. To defend the staff or a third person from what staff reasonably believes is the imminent use of unlawful, nondeadly force;

    b. To prevent an escape from custody or to apprehend an escapee;

    c. To enforce the rules of the facility; or

    d. To thwart an imminent risk of suicide or the self-infliction of serious bodily injury. (Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health.)

2. In the case of security staff whose issued equipment is unavailable, malfunctioning, or inadequate, the staff is authorized to use another means to defend the staff or a third person from what the staff reasonably believes to be the imminent use of unlawful nondeadly force.

3. Staff may not use an electronic weapon or a less than lethal munition unless the Commissioner, or designee, has given prior specific authorization to do so in the event its use becomes necessary to resolve the situation.

4. Prior to using a chemical agent, electronic weapon, or a less-than-lethal munition, staff shall make reasonable efforts to advise the resident that, if the resistive or assaultive behavior does not stop immediately, the item will be used.

5. When a use of physical force is planned in advance or there is a situation that could give rise to the need to be prepared to use physical force, prior to using a chemical agent, electronic weapon, a less-than-lethal munition, or any use of force

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force,<br>    General Guidelines | 9. Security and Control | Page 4 of 10<br>**Confidential Policy**<br>2/20/14R |

technique that might cause bodily injury, the Juvenile Facility Operations Supervisor, or other supervisory staff, shall contact the facility health care staff for possible precautions related to the use of the item or technique.

### Procedure E:    Use of Deadly Force by Security Staff

1. Facility security staff are justified in using deadly force (physical force that a person uses with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury) against residents of Departmental juvenile facilities using approved techniques and equipment when staff reasonably believes such force is necessary to defend the staff or a third person from what the staff person reasonably believes is the imminent use of unlawful deadly force; or

2. In the case of security staff whose issued equipment is unavailable, malfunctioning, or inadequate, the staff is authorized to use another means to defend the staff or a third person from what the staff reasonably believes to be the imminent use of unlawful deadly force.

### Procedure F:    Video/Audio Recording Use of Force Incidents

1. The Chief Administrative Officer, or designee, shall ensure that a sufficient number of security staff are trained in the use of hand-held video/audio cameras to ensure the availability of trained staff on a 24/7 basis.

2. The Chief Administrative Officer, or designee, shall ensure that at the beginning of each shift trained staff complete the following camera check with respect to every facility hand-held camera:

    a. Inspect the physical condition of the camera for damage;
    b. Ensure the battery in the camera is fully charged and all replacement batteries are charged;
    c. Ensure a new disc/memory card is in the camera;
    d. Ensure the on-screen date/time stamp is accurate;
    e. Ensure the integrated light is operating properly;
    f. Run a sample recording to confirm the operability of the equipment and the quality of the recording, both video and audio; and
    g. Notify Central Control of the completion of the camera check, which shall then be logged in the Central Control log book.

3. When a use of physical force is planned in advance or there is a situation that could give rise to the need to be prepared to use physical force, such as escorting a resident to observation, the Juvenile Facility Operations Supervisor, or other supervisory staff, shall ensure that a hand-held video/audio camera is used to record the incident.

4. The Juvenile Facility Operations Supervisor, or other supervisory staff, shall ensure

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 5 of 10 <br> **<span style="color:red">Confidential Policy</span>** <br> 2/20/14R |

that the staff assigned to operate the camera is trained in the use of the camera and auxiliary functions, such as battery replacement.

5. The Juvenile Facility Operations Supervisor, or other supervisory staff, shall ensure that the camera is operable prior to the initiation of the planned use of force or the initiation of the situation that could give rise to the need to use force.

6. The camera operator shall begin recording the incident by identifying him/herself as the camera operator and shall proceed to record the entire incident from beginning (the supervisor's briefing) to end (the resident's placement in a secured area and the supervisor's concluding statement). The camera shall remain focused on the resident throughout the duration of the incident. Every effort shall be made to ensure that the view of the resident remains unblocked.

7. The camera operator shall record any assessment of the resident's medical and mental health by facility health care staff, being sure to record a full view of the resident during the medical assessment and being sure to record a clear audio during both assessments.

8. Any time the camera has to be turned off while in the process of recording, the camera operator shall give an audible explanation (e.g., "replacing battery," "replacing disc or memory card," etc.) prior to turning the camera off. The camera operator shall audibly state the time just prior to turning the camera off and also state the time immediately after resuming the recording.

9. If damage to or malfunction of the camera causes the camera to be replaced during the incident, an audible explanation shall be given immediately after resuming the recording on the replacement camera, as well as the time the original camera malfunctioned and the time the recording was resumed with the replacement camera.

10. When a use of physical force is not planned in advance and it is not a situation that could give rise to the need to be prepared to use physical force, but the use of physical force becomes necessary due to a spontaneous incident, every effort shall be made to obtain a hand-held video/audio camera to record as much of the incident as possible. The camera operator shall follow the prior procedures to the extent possible.

11. Staff failing to record incidents as required by this policy, tampering with recording equipment, altering recordings, removing, copying, or transmitting recordings without authorization from the Commissioner, or designee, or the facility Chief Administrative Officer, or using recording equipment for a use other than one authorized in this policy or other Departmental policies may be subject to disciplinary action and/or criminal prosecution.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force,<br>    General Guidelines | 9. Security and Control | Page 6 of 10<br><span style="color:red">Confidential Policy</span><br>2/20/14R |

**Procedure G:    Medical and Mental Health Assistance**

1.  The Juvenile Facility Operations Supervisor, or other supervisory staff, shall have the resident medically and mentally assessed as soon as possible after any incident involving the use of physical force (physical action against another person that creates an imminent and substantial risk of causing bodily injury to that person).

2.  If the resident is transported to another Departmental facility, the Juvenile Facility Operations Supervisor, or other supervisory staff, shall notify the receiving facility staff of any force used against the resident, and the resident shall be medically and mentally assessed as soon as possible at the receiving facility.

**Procedure H:    Storage and Disposal**

1.  Security staff shall adhere to Department Policy 9.24, Firearms, for the storage and disposal of firearms and related equipment.

2.  When not being carried, handcuffs, chemical agents, electronic weapons, less-than-lethal munitions and other restraint or defensive equipment shall be stored in a secure location that is outside the secure perimeter of the facility, or, at a minimum, outside resident housing and program areas.

3.  The Chief Administrative Officer, or designee, shall be responsible to authorize the disposal of handcuffs, chemical agents, electronic weapons, less-than-lethal munitions and other restraint or defensive equipment.  Designated staff shall be responsible to carry out the disposal.  Whenever the item is destroyed or otherwise disposed of, the person disposing of the item and shall complete a report using a Disposal of Equipment form (see Attachment B) describing the circumstances surrounding the disposal, including the reason for the disposal and the method of disposal.  Disposal shall be witnessed and the witness shall sign the report.

4.  Staff shall comply with the manufacturer's instructions and specifications regarding safe disposal and shall ensure the disposal does not pose a hazard to persons or the environment.

**Procedure I:    Reporting and Documentation**

1. Security staff shall adhere to Department Policy 9.24, Firearms, for the reporting and documentation of the use of firearms, including when staff draws, points, or otherwise uses their firearm.

2.  Staff shall verbally notify the Chief Administrative Officer, or designee, as soon as possible of any use of force resulting in bodily injury, including any use of chemical agents, electronic weapons, less-than-lethal munitions, and any use of firearms, and any medical services rendered.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force,<br>    General Guidelines | 9. Security and Control | Page 7 of 10<br>**Confidential Policy**<br>2/20/14R |

3. Any staff involved in a use of force incident shall complete an incident report and submit it to their supervisor prior to the end of their shift, unless the staff person(s) are unable to complete the incident report due to injury, or other reasons as determined by the Juvenile Facility Operations Supervisor.

4. The Juvenile Facility Operations Supervisor, or other supervisory staff, shall complete the Supervisor's Review, Use of Physical Force Report (Attachment C) and submit it to the facility Chief Administrative Officer, or designee, no later than the end of their shift. If any staff involved in the incident is not able to complete a report, it shall be documented in the Supervisor's Review, Use of Physical Force Report explaining why their report is not complete or not able to be included.

5. Documentation of the use of force shall include:

    a. Date, time, and location of the incident;
    b. The names of all persons involved in or, to the extent practicable, witnessing the incident;
    c. A description of the incident in which force was used and justification for the same;
    d. The type of force used, by whom, against whom;
    e. Identification of any equipment and/or other item used;
    f. If applicable, a description of the bodily injury;
    g. If applicable date, time, and identity of medical staff notified and any written reports by medical staff; and
    h. If applicable, photographs and/or audio/video recordings, including from the hand-held camera, surveillance video equipment, and any other recordings.

6. The Chief Administrative Officer, or designee, shall review all documentation concerning the use of force, including any photographs and/or audio/video recordings.

7. The Chief Administrative Officer, or designee, shall forward the Supervisor's Review, Use of Physical Force Report to the Commissioner, or designee, for further review within three (3) business days, and shall make available at the facility any photographs, audio/video recordings, or other evidence upon the request of the Commissioner, or designee.

8. The Chief Administrative Officer, or designee, shall ensure that any evidence related to the use of force incident, including any audio/video recordings or photographs, are secured, locked and stored as evidence in the facility evidence repository, following all chain of custody protocols.

9. In any incident in which deadly force is used, regardless of whether death occurs, the Commissioner, or designee, shall ensure an internal or external investigation is conducted to determine compliance with Maine Statutes and this policy, its

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 8 of 10 <br> **Confidential Policy** <br> 2/20/14R |

procedures, and training. The Commissioner, or designee, may refer any other use of force incident for an internal investigation.

10. Every use of force by staff resulting in serious bodily injury or death shall be immediately reported by the Chief Administrative Officer, or designee, to the Commissioner, or Director of Operations or Director of Security, who shall notify the Investigations Division of the Attorney General's Office as soon as possible.

11. The Commissioner, or designee, shall refer a report of use of excessive force that is substantiated after an investigation to the appropriate criminal prosecuting authority. i.e., the Attorney General's Office or a District Attorney's office. If the substantiated report is one of use of excessive force by a corrections officer or correctional investigative officer, the report shall also be referred to the Maine Criminal Justice Academy.

**Procedure J: Post Incident**

1. In all instances involving the use of deadly force, regardless of whether death or bodily injury occurs, the Office of the Attorney General's Protocol on the Reporting and Investigation of the Use of Force shall be followed.

2. When a staff use of force causes death, the staff shall be placed on administrative leave. Said leave shall continue until it is determined by a licensed mental health professional that the staff is ready to return to duty and it is determined that no administrative disciplinary action or criminal proceedings will be pursued against the staff. Staff involved in any other use of force incident may be placed on administrative leave.

3. All staff involved in a deadly force incident shall be afforded the opportunity to attend a critical stress debriefing, as soon as reasonably possible.

## VIII. PROFESSIONAL STANDARDS

**ACA:**

**4-JCF-2A-13** **Security items are stored in a secure but readily accessible depository outside of juvenile housing and activity areas.**

**4-JCF-2A-15** **The facility maintains a written record of routine and emergency distribution of restraint equipment.**

**4-JCF-2A-19** **All special incidents, including but not limited to the taking of hostages, use of restraint equipment, or the use of physical force, are reported in writing, dated and signed by the staff person reporting the incident. The report is placed in the juvenile's case record and reviewed by the facility administrator and/or the parent agency.**

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, General Guidelines | 9. Security and Control | Page 9 of 10 **Confidential Policy** 2/20/14R |

**4-JCF-2A-27** **(MANDATORY)** The level of authority, access, and conditions required for the availability, control and use of chemical agents and equipment related to its use must be specified. Chemical agents are used only with the authorization of the facility administrator, medical director, or designee.

1. Chemical agents and equipment related to its use are inventoried at least monthly to determine their condition and expiration dates.

2. Personnel using chemical agents to control juveniles submit written reports to the facility administrator or designee no later than the conclusion of the tour of duty.

3. All persons contaminated in an incident involving the use of a chemical agent must receive an immediate medical examination and treatment.

**4-JCF-2A-28** Firearms are not permitted in the facility, except in emergency situations.

**4-JCF-2A-29** **(MANDATORY)** The use of physical force is restricted to instances of justifiable self-defense, protection of others, protection of property, and prevention of escapes, and then only as a last resort in accordance with appropriate statutory authority. The agency has developed and implemented a plan to ensure that staff have the skills necessary to de-escalate situations and to reduce the need for physical force. In no event is physical force justifiable as punishment. Persons injured in an incident receive immediate examination and treatment. A written report is prepared following all uses of force and is submitted to administrative staff for review.

| POLICY NUMBER/TITLE | CHAPTER NUMBER/TITLE | PAGE NUMBER |
|---|---|---|
| 9.18 Use of Force, <br> General Guidelines | 9. Security and Control | Page 10 of 10 <br> **Confidential Policy** <br> **2/20/14R** |